# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-1655

_____

Gwendolyn Ward,                    *
                                   *
           Appellant,              *
                                   *  Appeal from the United States
     v.                            *  District Court for the Eastern
                                   *  District of Missouri.
The Procter & Gamble Paper         *
Products Company,                  *
                                   *
           Appellee.               *

_____

Submitted: November 21, 1996

Filed: April 10, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and SACHS,[1] District Judge.

_____

MAGILL, Circuit Judge.

Gwendolyn Ward appeals the district court's[2] grant of summary judgment to her former employer, the Procter & Gamble Paper Products Company (the Plant), in Ward's Title VII employment discrimination suit. Because Ward failed to present evidence that the Plant's legitimate, nondiscriminatory reasons for discharging

_____

[1]THE HONORABLE HOWARD F. SACHS, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

her are pretextual, we affirm the district court's grant of summary judgment.

## I.

The Plant employed Ward, an African-American woman, from June 5, 1989, until she was dismissed on September 29, 1993. Ward worked on a manufacturing line as a technician. The Plant managed the production lines using a team-based work system which required employees to interact with each other.

Over time, Plant managers concluded that Ward was having difficulty interacting with her co-workers. In an employment evaluation, dated January 30, 1992, Ward's team manager instructed Ward that she needed to improve in the areas of teamwork and cooperation. Ward's team manager specifically noted that unresolved disputes with the team or team leader were more appropriately taken to management, rather than handled through disruptive confrontations on the manufacturing floor.

On August 31, 1992, Ward was involved in a confrontation with two white male employees in which she used foul language. Her fellow employees, rather than Ward, reported the incident to management. Immediately following the incident, Ward refused to discuss it with management and Ward was sent home for insubordination. Ward now claims that she was too upset to discuss the incident at the time and that the incident was the result of the two male employees' harassment of her. The Plant disciplined Ward for the incident by placing her on Level One probation. Level One is the lowest of the Plant's four levels of probation.

Ward completed ten months of probation without incident when the events occurred that precipitated her dismissal. On September 29, 1993, Ward was involved in an argument with her team leader, Sharon Heise. The argument began after Heise told Ward that the team had voted to move Ward off the team. The manner in which the argument escalated is in dispute, with Ward claiming that following mutual finger pointing Heise grabbed Ward's finger. However, there is no dispute that, in anger, Ward struck Heise. See Aff. of Gwendolyn Ward at 1, reprinted in Appellant's App. at 15; Dep. of Gwendolyn Ward at 25, reprinted in Appellant's App. at 42; Aff. of Reginald Gipson at 1, reprinted in Appellant's App. at 72. Heise did not reciprocate.

The nature of the contact is also unresolved. Ward states that she "hit [Heise] on the side of the arm, slapped her on the side of the arm." Dep. of Gwendolyn Ward at 18, reprinted in Appellant's App. at 39; see also Aff. of Gwendolyn Ward at 1, reprinted in Appellant's App. at 15. However, Linda Greaser, the Plant's employee relations manager, states in her affidavit that Heise told Greaser that Ward had "punched" her. Aff. of Linda Greaser at 2, reprinted in Appellant's App. at 59.

The incident was investigated by a group of two African-American and two white managers. They recommended that, because striking a fellow employee in anger violated the Plant's rules against fighting, Ward's employment be terminated. The Plant's manager, Joseph Doner, accepted the recommendation and made the decision to terminate Ward's employment.

Following her dismissal, Ward made a claim of sex and race discrimination to the Equal Employment Opportunity Commission (EEOC). The EEOC concluded that the evidence obtained during its

-3-

investigation did not establish a violation of Title VII of the Civil Rights Act of 1964.

On December 19, 1994, Ward brought suit in district court against the Plant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-5 (1994), and the Civil Rights Act of 1966, 42 U.S.C. § 1981 (1994), alleging that the termination of her employment was racially discriminatory. The district court, concluding that Ward had failed to make a prima facie case, granted the Plant's motion for summary judgment. Ward appeals.

## II.

We review a grant of summary judgment de novo, using the same standard which governed the district court's decision. See Lenhardt v. Basic Inst. of Tech., 55 F.3d 377, 379 (8th Cir. 1995). Summary judgment is proper if, taking all the evidence and reasonable inferences from the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tindle v. Caudell, 56 F.3d 966, 969 (8th Cir. 1995). A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of material fact for trial. See Tindle, 56 F.3d at 969 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

Taking all the evidence and reasonable inferences from the evidence in the light most favorable to Ward, the fact remains that

Ward struck a fellow employee in anger. It is beyond question that an employee's striking of a fellow employee is a legitimate, nondiscriminatory reason for dismissal. See John Giannopoulos v. Brach & Brock Confections, Inc., No. 96-2230, 1997 WL 134589, at *4 (7th Cir. Mar 26, 1997) (upholding grant of summary judgment to employer where plaintiff had punched a fellow employee); Witherspoon v. Westinghouse Elec. Corp., 814 F.Supp. 17, 20 (D.Md. 1993) ("[Plaintiff's] employer articulated a legitimate, nondiscriminatory reason ([Plaintiff]'s assault on [fellow employee]) for terminating her."); cf. Folkerson v. Circus Circus Enterprises, Inc., No. 96-16035, 1997 WL 71763, at *2 (9th Cir. Feb 21, 1997) (upholding grant of summary judgment to employer where plaintiff hit a patron in the mouth); Kahn v. U.S. Secretary of Labor, 64 F.3d 271, 279 (7th Cir. 1995) ("Moreover, communication made in the form of threats of violence or insubordination, during the course of otherwise protected activity, is removed from protection."); Ross v. Communications Satellite Corp., 759 F.2d 355, 358 (4th Cir. 1985) ("'When he introduced a threat of future violence into these conversations, the employer was left with no alternative but to discharge the claimant. The claimant's actions had they been a present threat to do bodily harm or introduce violence into the work place, would have constituted, without question, gross misconduct.'"). This is true regardless of whether the strike was an open-handed slap to the arm or a punch. An employer is simply not required to tolerate such behavior from its employees.

Nevertheless, Ward argues that her striking of Heise was merely a pretext for discrimination because Heise, a white employee, was disciplined less severely for her involvement in the

incident.[3]   Instances of disparate treatment can support a claim of pretext, but Ward must prove that she and Heise were similarly situated in all relevant respects.  See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994); Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988).  "Employees are similarly situated when they 'are involved in or accused of the same offense and are disciplined in different ways.'" Harvey, 38 F.3d at 972 (quoting Boner v. Board of Comm'rs, 674 F.2d 693, 697 (8th Cir. 1982)) (emphasis added).

Here, Ward and Heise were not similarly situated because their offenses were quite different.  Although they were both involved in the same argument, their actions are clearly differentiated because the incident involved two separate levels of escalation.  Taking the facts in the light most favorable to Ward, during the course of mutual finger pointing Heise grabbed Ward's finger as Ward was pointing in Heise's face. By contrast, at the very least Ward struck Heise with an open-handed slap to the shoulder.  Thus, mutual finger pointing escalated to finger grabbing, which in turn, escalated to an open-handed slap.  The Plant is not obligated to treat the two escalations as substantially similar because the escalations involved objectively different conduct.

Furthermore, our finding that Ward and Heise were not similarly situated is bolstered by the fact that they did not hold the same position and they did not share similar employment records.  Ward held the position of technician, whereas Heise was a team leader.  Although they may have shared some common job

---

[3]Ward also argues that the Plant's history of imposing the same discipline on both employees involved in incidents of fighting shows that the Plant's legitimate, nondiscriminatory reasons for discharging Ward were pretextual.  We find the incidents cited by Ward distinguishable and her argument unpersuasive.

-6-

duties, Heise's duties were more extensive. Furthermore, in contrast to Ward's record of disciplinary problems, no evidence was presented that Heise had anything but a spotless disciplinary record.

## III.

For the reasons given above, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.