Cite as 2023 Ark. App. 312

# ARKANSAS COURT OF APPEALS
### DIVISION III
No. CV-21-252

| | |
|---|---|
| JAMES YOUNG | Opinion Delivered May 24, 2023 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION [NO. 60CV-18-4905] |
| V. | |
| LITTLE ROCK WATER RECLAMATION AUTHORITY; AND GREG RAMON, IN HIS OFFICIAL CAPACITY | HONORABLE WENDELL GRIFFEN, JUDGE |
| APPELLEES | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant James Young brings this appeal of the Pulaski County Circuit Court's grant of summary judgment to appellees Little Rock Water Reclamation Authority and Greg Ramon, finding no genuine issue of material fact existed in relation to Young's claims under the Arkansas Whistleblower Act[1] and the Arkansas Civil Rights Act.[2] Because Young failed to refute the evidence that he was terminated for legitimate, nondiscriminatory reasons, we affirm.

---

[1]Ark. Code Ann. §§ 21-1-601 (Repl. 2022) et seq.

[2]Ark. Code Ann. §§ 16-123-101 (Repl. 2016 & Supp. 2021) et seq.

Young, a man of Scottish descent, was a two-time employee of the Little Rock Water Reclamation Authority ("LRWRA") as a wastewater plant operator. Young was rehired by LRWRA on August 14, 2013. He was terminated on March 5, 2018, for insubordination, harassment, and unacceptable working behavior in violation of LRWRA's policies and procedures. Young filed a complaint against LRWRA alleging violations of the Arkansas Whistleblower Act (AWBA) and the Arkansas Civil Rights Act (ACRA).

Young based his AWBA and ACRA claims on the following facts. Upon reemployment in 2013, Eric Wassell was the plant superintendent and Young's supervisor. The evidence and testimony in the record suggests that Young and Wassell had a strained working relationship. In May 2014, Young filed a grievance against Wassell regarding an incident wherein Young complained that Wassell had been physically and verbally unprofessional. LRWRA Department Director Walter Collins reviewed the documentation surrounding Young's grievance and found that there was evidence of both Young's insubordination and Wassell's inappropriate response. Both were counseled on how to respond more appropriately to such situations in the future.

In his deposition, Young testified that in November 2015 while requesting a step increase in pay, Wassell told him "that if I didn't like it – he knew I wasn't happy here, which was a lie, and if I didn't like it here, I could take my Scottish ass back home . . . ." Young alleged that shortly thereafter, Wassell told Young, "You're finished." Young admittedly did not report the alleged comments to human resources or anyone else, though he considered

these statements from Wassell as retaliation. Young testified that he believed he was retaliated against because he knew how to do his job and because Wassell did not like him.

Following his initial six-month review, it was consistently noted in Young's performance reviews that he needed improvement in "development of human relation skills with priority on Teamwork, Communications, Respect, and Trust." The parties agree that in October 2017, Young requested to change shifts from nights to days, but he quickly asked to return to the night shift, which was denied. In late 2017, Young complained that he had not received his step increase promised by Wassell in August 2017 and complained that he had been demoted, resulting in a loss of income and time off. According to LRWRA human resources supervisor Lynn Luther ("Luther"), she met with Young concerning these issues on October 17, 2017, and January 8, 2018.

In January 2018, Tracy Kerr, a lead operator and Young's superior, reported to Wassell that while she and Young were working the same shift, she directed Young to perform a specific task, and he yelled and cursed at her and told her to do it herself. Kerr also told Wassell that Young drove a vehicle, "screeching it to a halt" in front of her. Kerr asked Wassell to send someone else to work because she was nervous about being alone with Young. In Young's January 19, 2018 performance review, it was noted that Young needed improvement in teamwork values and recommended a referral to an "Employee Assistance Program" (EAP) and the formation of an employee performance improvement plan (PIP). Young responded that he disagreed with the review and refused to adhere to it in compliance with LRWRA policies.

On January 22, 2018, Young met with LRWRA chief operations officer, Howell Anderson, as requested by Young, along with Luther, Wassell, and Collins to discuss Young's performance review, shift change, and recommended PIP. On February 12, 2018, Young met with Chief Executive Officer Greg Ramon, Luther, and Anderson to further discuss the same issues. Luther began the process to implement the PIP and EAP referral, which was put on hold when Luther received Kerr's harassment complaint against Young.

On February 21, 2018, Kerr relayed the details of the January 2018 incident she had reported to Wassell and further stated that Young regularly ignored her directives and ridiculed her, likely because she is a woman. Young was placed on administrative leave from February 22–26, 2018, pending Luther's investigation. Luther interviewed multiple employees, including Wassell, who confirmed Kerr's complaint. Luther's investigation uncovered additional complaints of intimidating behavior by Young dating back to 2014.

On February 27, 2018, Luther, Collins, and Anderson met with Young to discuss Kerr's harassment complaint and hear his side of the story. Young denied all Kerr's allegations and stated he did not remember yelling or cursing. Following the meeting with Young, Luther met with Ramon to discuss her investigation into the complaint against Young. On March 5, 2018, Luther was present when Collins terminated Young for "insubordination and harassment, involving unacceptable working behavior with coworkers and upper management, in violation of Section 3.6 and Section 3.23 of the LRWRA's policies and procedures."

Young admitted that he had no documents showing that he complained of wasteful spending; however, he testified that his verbal report of wasteful spending to Wassell included the $85,000 LRWRA spent on an estimate for a deodorizing system and that operators were working overtime unnecessarily. He stated that he reported the wasteful spending regarding the number of operators working on holidays to Wassell, Collins, Luther, and Anderson in January 2018. He further admitted that he did not have any documentation to support his claim of national-origin discrimination. Young testified that his national-origin-discrimination claim was based on Wassell's telling him he could take his Scottish ass back home and his having to repeat himself to multiple people. Young later testified that he did not feel that he was terminated or suffered any adverse employment action because he reported wasteful spending for the $85,000 estimate. He conceded that he did not have any documentation showing that his 2014 grievance against Wassell led to his termination.

LRWRA moved for summary judgment, contending that Young failed to establish a prima facie case for a cause of action under the AWBA or the ACRA. LRWRA argued it had a legitimate, nondiscriminatory reason to terminate Young because he failed to meet its legitimate expectations and was terminated for insubordination and harassment in violation of LRWRA's policies and procedures. In response, Young argued that that LRWRA failed to establish entitlement to summary judgment because the facts viewed in a light most favorable to him supported his claims under the AWBA and ACRA. The only evidentiary support Young offered in his response was his own deposition testimony, his complaint, and

5

his written materials submitted to human resources. In his deposition, Young claimed that Kerr made false accusations against him because she wanted his job. He claimed that his January 2018 performance review was less favorable to "paper the file" and that Kerr's complaint about him to Luther was contrived because of his complaints to Wassell about Kerr's incompetence and wasteful spending. Young alleged that he met all LRWRA's legitimate expectations.

At the February 12, 2021 hearing on LRWRA's motion, the circuit court concluded that no genuine issue of material fact existed concerning Young's AWBA claim because Young admitted in his deposition that he did not suffer an adverse employment action due to his report of wasteful spending. The circuit court found that no causal connection existed between Young's alleged reporting of wasteful spending and his termination. In considering Young's retaliation claim, the circuit court noted that Young's claim had to be supported by evidence that he opposed an unlawful act or practice committed by LRWRA and that he had to present evidence of "some kind of charge or investigation or something that resulted in him receiving adverse action."

The circuit court addressed Young's claim for discrimination based on his national origin by pointing to Young's testimony that he did not make an issue of or complain about the comments concerning his Scottish heritage or accent. The court further noted that Young never alleged any discriminatory treatment based on his Scottish heritage or accent. Finally, the circuit court found that no genuine issue as to any material fact existed concerning whether Young met LRWRA's legitimate work expectations, because he was fired

for failing to meet such expectations and for his conduct. The court did not find any factors

that gave rise to an inference of discrimination.[3] Young appealed, arguing that the question

of whether he established claims for retaliatory discharge or violations of the AWBA or

ACRA was a question of fact for the jury to decide.

The Arkansas Supreme Court has repeatedly held in considering the grant of

summary judgment that

> [i]n these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. . . .
>
> . . . .
>
> Once a moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the

---

[3]Immediately following the summary-judgment hearing, Young filed a second amended and supplemental complaint and a motion to disqualify Judge Griffen. Three days later, Young filed an amended motion to disqualify Judge Griffen. The circuit court entered its written order granting summary judgment to LRWRA on February 18, 2021. On March 1, LRWRA filed a response to Young's amended motion to disqualify Judge Griffen and a motion to strike Young's second amended and supplemental complaint. Young filed his notice of appeal and designation of record and his amended notice of appeal and designation of electronic record on March 12, 2021, which appealed only the circuit court's February 18, 2021 order. Young's amended notice of appeal included the statement required by Ark. R. App. P.–Civ. 3(e)(vi): "As required by Rule 4, Plaintiff abandons all pending but unresolved claims. Plaintiff subscribes to all rules necessary to effectuate this appeal and for all other just and proper relief." However, Young argues on appeal that the circuit court ignored his second amended and supplemental complaint and that Judge Griffen erred by not disqualifying himself. Young failed to preserve these issues for review because he failed to file a second amended notice of appeal and designation of electronic record following the circuit court's order denying his motion to disqualify and granting LRWRA's motion to strike. As such, we decline to address these allegations of error.

7

opposing party must demonstrate a genuine issue of material fact by meeting proof with proof.[4]

The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion.[5]   Upon consideration of claims under the ACRA and Americans with Disabilities Act, this court has found that

> [i]n the context of a discrimination case, our supreme court has noted that "[m]ore than mere assertions or possibilities must be asserted to defeat a motion for summary judgment." Stated another way, general statements in affidavits and deposition testimony are insufficient to withstand a properly supported motion for summary judgment. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[6]

In *Bales v. City of Fort Smith*,[7] this court found that "Sampson failed to offer any evidence linking his formal reprimand to his alleged whistle-blowing communication, and without any evidence of causation, Sampson failed to meet proof with proof. Accordingly, his whistle-blower claim necessarily fails."   Here, Young's retaliation claim under the AWBA failed to establish a genuine issue of material fact.   His testimony refuted the possibility that he suffered an adverse employment action in retaliation for his report of wasteful spending.

---

[4]*Chambers v. Stern*, 347 Ark. 395, 401, 64 S.W.3d 737, 740–41 (2002) (citations omitted).

[5]*Johnson v. De Kros*, 2014 Ark. App. 254, 435 S.W.3d 19.

[6]*Alexander v. E. Tank Servs., Inc.*, 2016 Ark. App. 544, at 9–10, 505 S.W.3d 239, 245 (citations omitted).

[7]2016 Ark. App. 491, at 12, 505 S.W.3d 705, 713.

While his testimony concerning the reporting of wasteful spending was at times contradictory, Young testified that did not feel he was terminated or suffered any adverse employment action because he reported wasteful spending. As such, the circuit court committed no error in granting summary judgment on Young's AWBA and retaliation claims.

As to Young's national-origin-discrimination claim, "The Arkansas Civil Rights Act, originally enacted in 1993, provides citizens of this state legal redress for civil rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses. The Act also seeks to prevent retaliatory conduct against those seeking its protection."[8] In reviewing ACRA claims, the Arkansas Supreme Court has consistently held that

> [u]nder this test, the burden of persuasion never leaves the plaintiff, but there is a shift in the burden to come forward with evidence: (1) the plaintiff must present a prima facie case consisting of four distinct elements; (2) the defendant must rebut the prima facie case by showing non-discriminatory reasons for the termination; and (3) the plaintiff must show the reasons are pretextual. The four elements that are necessary to establish a prima facie case of racial discrimination are: (1) that he is in the protected class; (2) that he met applicable job qualifications; (3) that his employment was terminated; and (4) that there is some additional showing that race was a factor in the termination.[9]

---

[8]*Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 570, 11 S.W.3d 531, 536 (2000).

[9]*Crockett v. Counseling Servs. of E. Ark., Inc.*, 85 Ark. App. 371, 380–81, 154 S.W.3d 278, 284 (2004) (citations omitted).

This court has concluded that at all times, the plaintiff bears the ultimate burden of demonstrating that discrimination was the real reason for the employer's actions. Courts do not sit as a super-personnel department that reexamines an entity's business decisions.[10]

Arkansas has continuously concluded as follows: "But even if we assume that [the plaintiff] has presented sufficient evidence to establish a prima facie case for retaliation, her claim must fail because [the defendant] has presented a legitimate, nondiscriminatory reason for terminating [plaintiff]—that is, her continued poor performance."[11]

Young testified that his ACRA national-origin-discrimination claim was based on Wassell's comments about taking his "Scottish ass back home" and having to repeat himself to others at LRWRA. Young admitted that he did not report the discriminatory comments to human resources and presented no other evidence or testimony to support his claim that his national origin was a factor in his termination. General statements in affidavits and deposition testimony are insufficient to withstand a properly supported motion for summary judgment.[12] In addition to Young's admissions during his deposition, LRWRA produced

---

[10]*Alexander*, *supra*.

[11]*Johnson v. Windstream Commc'ns, Inc.*, 2018 Ark. App. 150, at 14, 545 S.W.3d 234, 242. *Accord Moyer v. DVA Renal Healthcare, Inc.*, 368 F. App'x 714, 717 (8th Cir. 2010) ("DVA had legitimate, nondiscriminatory reasons for Moyer's termination. Insubordination and violation of company policy are justifiable reasons for termination.").

[12]*Alexander*, *supra*.

affidavits, emails, and personnel records to support its position that it terminated Young for harassment and insubordination, both legitimate, nondiscriminatory reasons.

"If the employer advances a legitimate, nondiscriminatory reason for the employee's discharge, the employee must present 'facts which if proven at trial would permit a jury to conclude that the employer's proffered reason is pretextual and that intentional discrimination was the true reason for the employer's actions.'"[13]  Outside of his own testimony concerning Wassell's comments, Young presented no evidence that his termination for insubordination and harassment was pretextual or that he was intentionally discriminated against.  Instead, he argued that reasonable minds could differ on whether his termination was related to national origin discrimination or retaliation based on such comments.  The plaintiff in *Flentje* made a similar argument:

> Instead, Flentje argues that although the facts may not be in dispute, there may still be issues for trial because differing inferences may be drawn from those facts.  However, inferences to be drawn from undisputed facts must be more than mere possibilities; they must be such that "reasonable minds" would come to "reasonably" different hypotheses about the bank's actions.  Examining the abstract and record, it is evident that no such reasonable inferences are present and that the appellant thus fails to meet "proof with proof."[14]

In accordance with *Flentje*, differing inferences cannot be drawn from the admitted facts in this case.  Young failed to establish that his Scottish national origin was a factor in his termination, that his termination for harassment and insubordination was pretextual, or that

---

[13]*Flentje*, 340 Ark. at 572, 11 S.W.3d at 537 (citations omitted).
[14]*Id.* at 573, 11 S.W.3d at 538–39 (citations omitted).

he was intentionally discriminated against.  Accordingly, the circuit court committed no error in entering summary judgment in favor of LRWRA on Young's claims of national-origin discrimination.  We affirm.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Corbitt Law Firm, PLLC*, by: *Chris P. Corbitt*, for appellant.

*Jenna Adams* and *Gabrielle Gibson*, for appellees.