

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-2006

# Money v. Provident Mutual Life

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3438

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Money v. Provident Mutual Life" (2006). *2006 Decisions.* Paper 775.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/775

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3438
_____

DENNIS R. MONEY,

Appellant

v.

PROVIDENT MUTUAL LIFE
INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-846)
District Judge:  Honorable Ronald L. Buckwalter
_____

Submitted Under Third Circuit LAR 34.1(a)
June 15, 2006

Before:  FISHER, CHAGARES and REAVLEY,* *Circuit Judges.*

_____

(Filed :  July 7, 2006)
_____

OPINION OF THE COURT
_____

_____

*The Honorable Thomas M. Reavley, United States Circuit Judge for the Fifth
Circuit, sitting by designation.

CHAGARES, Circuit Judge.

This is an employment discrimination case arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000(e) et seq., and under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 et seq. Appellant Dennis R. Money ("Money") appeals the District Court's order granting Summary Judgment for defendant Provident Mutual Life Insurance Company ("Provident") on his race discrimination claim, and the District Court's order granting Provident's Motion to Dismiss his age discrimination claim. Because we write only for the parties, we do not state the facts separately. For the following reasons, we will affirm both orders.[1]

I.

Money, an African-American, contends that Provident fired him because of his race and his age, and not because of his role in a violent altercation with Donald Hiles ("Hiles"), an employee of the company providing security services at Provident. On July 1, 2002, Hiles allegedly called out to Money using racial slurs and, as Money tried to walk past, allegedly struck him in the back. Money turned and punched Hiles in the face, knocking Hiles to the ground. Money then reported the incident. Ten days later, Money

---

[1] We do not consider Money's argument that the District Court erred in granting Provident's motion to dismiss his claim for punitive damages, because the District Court, in fact, denied that motion.

was terminated, giving rise to the present claims.  Hiles was also terminated by his employer.

As an initial matter, we note that Money's opening brief only challenged the discriminatory termination portion of the District Court's decision.  He has therefore waived his ability to challenge the other two matters determined on summary judgment, allegations of retaliatory discharge and a hostile work environment.  See, e.g.,  Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 192 (3d Cir. 1999) (holding argument that appellant did not raise in opening brief waived).  As to the remaining issues, we exercise plenary review.  See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

II.

In the absence of direct evidence of discrimination (as in the present case), a plaintiff may prove discrimination according to the burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell-Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination.  Id. at 802.  If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination.  Id.  Once the employer meets its relatively light burden, the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual.  See id. at 804-05.  Accordingly, once an employer has proffered a legitimate, nondiscriminatory reason, the plaintiff "generally must submit evidence which: (1) casts sufficient doubt upon each of the legitimate

3

reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  Fuentes, 32 F.3d at 762.  Because the ultimate issue is whether "discriminatory animus" motivated the employer, it is not enough to show that the employer made a wrong or mistaken decision.  Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason.  Id. at 765.

Assuming Money has established a prima facie case of employment discrimination, Provident explained that Money was terminated because he struck Hiles, violating Provident's policy prohibiting workplace violence.  See SA at 146 (Provident's workplace violence policy stating, in part: "Provident Mutual has a strong commitment to maintaining a workplace atmosphere that, to the greatest degree possible, prohibits violent or threatening behavior toward all individuals on Company property....Any employee who engages in violent or threatening behavior toward any individual, including, but not limited to other employees, contract employees, or visitors, while the employee is on Company premises...will be subject to immediate discipline up to and including termination of employment.").  Committing violence in the workplace is clearly a legitimate, nondiscriminatory reason for terminating an employee.  See Clark v. Runyon, 218 F.3d 915, 919 (8th Cir. 2000) ("Both actual violence against fellow

4

employees and threats of violence are legitimate reasons for terminating an employee."); Johnson v. Hondo, Inc., 125 F.3d 408, 415 (7th Cir. 1997); Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997).

Money argues that Provident's explanation was pretextual because he struck Hiles in self-defense, because Provident's investigation of the incident was deliberately inadequate, and because Provident's decision to terminate him was unreasonable. Money first contends that, because he hit Hiles in self-defense, a reasonable jury could disbelieve Provident's explanation of why Money was fired. However, Hiles's status as the person initiating the violence is not, alone, a basis upon which a jury could find in Money's favor. Money admits that he struck Hiles: a violent act that was forbidden by an established policy, regardless of the provocation. Ultimately, the fact that Hiles struck first does nothing to cast doubt on Provident's explanation that Money was fired for striking Hiles.

Money also argues that Provident's investigation of the incident was deliberately insufficient. Specifically, he claims that Provident's Human Resources Manager lied about the extent of the investigation in order to cover up the fact that the decision to fire Money had nothing to do with punching Hiles. Because Money presents nothing more than a naked credibility attack, unsupported – and often directly contradicted – by the record, this argument does not assist Money in meeting his McDonnell-Douglas burden.

Finally, Money questions whether the severity of his punishment was warranted. In support, he points to his previous good record; the fact that the policy was not "zero

5

tolerance" but provided for punishment "up to and including termination" for various transgressions; his supervisor's recommendation that Money attend anger management classes as an alternative to termination; and the fact that self-defense is a defense to assault under state criminal law. Money presents no evidence to suggest that any decisionmaker at Provident harbored racial animus and the termination decision itself is not so unreasonable as to assist Money in proving pretext under McDonnell-Douglas. At most, these facts show that Provident was not *required* to fire Money over the incident with Hiles. Even if Provident's decision was imprudent, unwise, and incompetent, a merely bad employment decision is not actionable under Title VII. See Fuentes, 32 F.3d at 765. Therefore, because Money cannot show that Provident's reason for terminating him was pretextual, we conclude that the District Court properly granted Provident's summary judgment motion.

### III.

A party seeking relief under the ADEA must exhaust his or her administrative remedies as required by 29 U.S.C. § 626(d). See Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (ADEA plaintiff must exhaust administrative remedies before he may access judicial relief). Under section 626(d), an aggrieved party may not file an age discrimination complaint in federal district court until 60 days after filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Because Pennsylvania is a "deferral state" – one with a state agency that has authority to investigate employment discrimination charges – the plaintiff may file charges with the

6

EEOC within 300 days of the alleged discriminatory act. See 29 U.S.C. §§ 626(d)(2) & 633(b); Watson, 235 F.3d at 854.

Money concedes that he never filed a formal charge of age discrimination with the EEOC, but argues that he satisfied the requirements of § 626(d) by sending the EEOC a copy of the complaint that initiated this action in the District Court. Money was terminated on July 10, 2002, and he sent the complaint to the EEOC on January 22, 2004 – more than 560 days after his allegedly unlawful termination, and fewer than 60 days before filing his complaint in federal district court in February, 2004. Thus, the District Court correctly determined that Money's age discrimination was barred for failure to follow section 626(d).

Money claims, however, that his Title VII complaint should be "enlarged" to include his ADEA claim. We have recognized that the parameters of a discrimination action "are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976), cert. denied, 429 U.S. 1041 (1977); see also Waiters v. Parsons, 729 F.2d 233, 238 (3d Cir. 1984) (suit alleging retaliatory termination was not time-barred because it alleged the same "core grievance" as an earlier EEOC complaint of retaliation). Money admits that his charge of discrimination made no mention of age discrimination and he candidly states that his age discrimination claim was only conceived after currently-retained counsel reviewed this case, following the EEOC investigation.

7

Money's argument is rejected because his age discrimination claim could not reasonably be expected to grow out of his charge of race discrimination. See Davis v. Sodexho, 157 F.3d 460, 464 (6th Cir. 1998) (appellant's "age discrimination claim neither in fact grew out of the EEOC's investigation of race discrimination and retaliation claims, nor would the facts related with respect to these two claims prompt the EEOC to investigate age discrimination."); Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 675 (9th Cir. 1988) ("Title VII and ADEA claims arise from entirely different statutory schemes. [Appellant's] original charge contains no hint of age discrimination. His ADEA claim should be time-barred."). We therefore conclude that the District Court properly granted Provident's motion to dismiss Money's age discrimination claim as time barred.

IV.

Accordingly, for the foregoing reasons, we will affirm the District Court's orders.