**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1746

_____

EXEMPLAIRE EXANTUS,
                                    Appellant
v.

HARBOR BAR & BRASSERIE RESTAURANT

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 09-cv-2693)
District Judge: Honorable Dennis M. Cavanaugh

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 13, 2010

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Opinion filed: July 14, 2010)

_____

OPINION

_____

PER CURIAM

     Exemplaire Exantus appeals a decision of the District Court granting Defendant's

motion for summary judgment.  For the reasons set forth below, we will affirm the

judgment of the District Court.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the facts. Exantus is a former employee of Harbor Bar and Brasserie Restaurant ("HBB"), where he worked as a waiter from May 2007 until August 2007. In November 2007, Exantus filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been subject to discrimination at HHB during the final month of his employment. In March 2009, the EEOC informed Exantus that it was unable to conclude that the allegations he set forth established a violation of federal law on the part of HBB.

In June 2009, Exantus filed a complaint in the District Court alleging that he was subject to a hostile work environment while at HBB, and that he was discharged in retaliation for reporting discriminatory conduct, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). HBB moved to dismiss the case and Exantus responded by filing an opposition, which included the EEOC record. The EEOC record contained Exantus' written statement, dated July 31, 2007, which he earlier provided to HBB, and which describes the discrimination that he had allegedly endured at the restaurant. (See Supp. Appx. at 15-16.) Specifically, Exantus indicated that, at various times, staff members, including his immediate supervisor, would refer to him as a "Haitian Fuck." Id. Exantus also admitted in his statement that he retaliated against these individuals for doing so. Id. Specifically, he admitted to "lightly jab[bing]" several co-workers and

2

telling another that he would "kick his ass." Id.

Apparently, HBB management only came to know about the racial epithets after one of Exantus' co-workers complained about Exantus' behavior. When management confronted Exantus about his behavior, Exantus told them, for the first time, that he had been subject to verbal harassment based upon his race and national origin. As a result of Exantus' allegations, HBB conducted an internal investigation. HBB claims that although the company could not corroborate any of Exantus' claims, it nonetheless conducted racial sensitivity training for all employees. However, in late August 2007 HBB claimed that, once again, Exantus physically threatened a co-worker and was terminated as a result.

Before the District Court could rule on HBB's motion to dismiss, HBB moved for summary judgment based on Exantus' presentation and incorporation of the EEOC record into the District Court record. The District Court determined that the evidence, even when viewed in the light most favorable to Exantus, failed to establish any genuine issues of material fact. Summary judgment was entered in favor of HBB and Exantus filed a timely appeal.

II.

We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court's decision to grant summary judgment. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is appropriate when the

3

"pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (citation omitted).

III.

After a careful review of the record, we conclude that the District Court properly entered summary judgment in favor of HBB.

Hostile Work Environment

To establish the existence of an actionable hostile work environment under Title VII, a plaintiff must prove: (1) that he suffered intentional discrimination because of his race or national origin; (2) that the discrimination was severe and pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996). In employing this standard, a court must evaluate the frequency of

4

the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Title VII is not violated by the "[m]ere utterance of an . . . epithet which engenders offensive feelings in an employee" or by mere "[d]iscourtesy or rudeness," unless so severe or pervasive as to constitute an objective change in the conditions of employment. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (alterations in original) (internal quotation marks and citation omitted).

The District Court correctly ruled that the totality of the circumstances was not sufficiently severe or pervasive to support a hostile work environment claim. While we agree with the District Court that the epithet "Haitian Fuck" is indeed unpalatable and inappropriate, the incidents appear to have been isolated, rather than pervasive and severe. There is also no evidence in the record to suggest that the complained-of conduct materially interfered with Exantus' ability to do his work. Moreover, Exantus does not assert that he was physically threatened by the comments. See Harris, 510 U.S. at 23. To the contrary, by his own account, any physical violence or threat was instituted by Exantus. Thus, to the extent a jury could conclude that a hostile work environment existed during the time of Exantus' brief employment at HBB, we agree with the District Court that "inasmuch as Exantus claims to be a victim, he was equally a perpetrator of the

5

hostile work conditions." (See Dist. Ct. Opinion at 10.)[1] Summary judgment was therefore appropriate.

Retaliatory Discharge

In order to establish a prima facie case of retaliatory discharge under Title VII, an employee must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

If the employee establishes his prima facie case, "the familiar McDonnell Douglas approach applies in which the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 342 (internal quotation marks and citation omitted).

Even assuming that Exantus established a prima facie case of employment discrimination, HBB explained that Exantus was terminated because he threatened a co-worker shortly after HBB confronted him about his conduct and told him that it was

_____

[1] Furthermore, there is no dispute that a grievance procedure was in place at HBB and that management acted quickly in addressing Exantus' complaints. HBB conducted an internal investigation and provided sensitivity training for employees, notwithstanding the fact that Exantus' allegations were uncorroborated and that he only informed HBB about the epithets *after* he was confronted by HBB about hitting a co-worker.

unacceptable. Committing violence in the workplace is clearly a legitimate, nondiscriminatory reason for terminating an employee. See Clark v. Runyon, 218 F.3d 915, 919 (8th Cir. 2000) ("Both actual violence against fellow employees and threats of violence are legitimate reasons for terminating an employee."); see also Johnson v. Hondo, Inc., 125 F.3d 408, 415 (7th Cir. 1997).

Exantus does not deny his history of retaliating against his co-workers, but instead argues that "[HBB] offered no evidence that Mr. Exantus' reciprocating conduct intended to harm or injure because they took the position that any form of un-welcomed touching is violence." (App. Br. at 9.) As we have indicated, even threats of violence may provide an employer with a legitimate reason for terminating an offending employee. Thus, we find Exantus' apparent argument that because he did not intend to injure or harm his co-workers, the offensive behavior does not constitute "violence," to be unavailing.

Because Exantus previously admitted to threatening and hitting his co-workers, we agree with the District Court that HBB proffered a legitimate, non-retaliatory reason for terminating him. Exantus has not presented any credible evidence suggesting that HBB's reason was pretextual, see Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994), and thus we conclude that no rational trier of fact could find that Exantus' termination was retaliatory.

For the foregoing reasons, we will affirm the judgment of the District Court.

7